UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| JERTON EVANS, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | No. 3:18-CV-247 |
| v. | ) | |
| | ) | Judge Collier |
| CLAIBORNE COUNTY BOARD OF EDUCATION, | ) | Magistrate Judge Guyton |
| | ) | |
| *Defendant.* | ) | |

## **M E M O R A N D U M**

Before the Court is Defendant Claiborne County Board of Education's motion for summary judgment on all of Plaintiff Jerton Evans's claims in this employment discrimination case. (Doc. 18.) Plaintiff responded in opposition (Doc. 24), and Defendant replied (Doc. 26). The Court will **GRANT** Defendant's motion for summary judgment (Doc. 18) **IN PART** as to Plaintiff's federal claims and **REMAND** Plaintiff's state claims to the Circuit Court for Claiborne County, Tennessee.

### I. BACKGROUND

Plaintiff, an African-American man, worked for Defendant as a teacher at Cumberland Gap High School for two years, from 2013 to 2015. In 2015, Defendant hired Plaintiff as an English teacher and head football coach at Claiborne High School for the 2015–2016 year. The parties executed a "Professional Certified Contract for 2015-2016" (the "Contract") on August 14, 2015, for the position of "English Teacher." (Doc. 18-6.) Plaintiff signed the Contract on his own behalf,

and Director of Schools Connie B. Holdway and Board Chairman Shannon England signed the Contract on behalf of Defendant. Defendant was a non-tenured teacher. (Doc. 24-1 at 19.)

Plaintiff was not allowed to select any of his assistant coaches for the 2015-2016 school year, and all of his assistant coaches were white. Defendant's head football coach for the 2016-2017 school year was a white male, and he was allowed to select four of his assistant coaches, all of whom were white.

On April 15, 2016, Defendant hand-delivered a letter to Plaintiff notifying him that his contract would not be renewed for the next year. (Doc. 24-2 at 29 [Def.'s Resp. to 2d Req. Admis. 1]; *id.* at 43 [Def.'s Resp. to 3rd Req. Admis. 16].) The letter was signed by Director of Schools Holdway. (Doc. 26-3.) It contained the following text: "This letter serves as notification that you have not been rehired in the Claiborne County School System for the 2016-2017 school year. We do appreciate the service that you provided to advance the academic performance of our students this past year." (*Id.*)

Almost two weeks later, on April 28, 2016, Plaintiff placed a message on Facebook requesting a meeting with parents and students about the football program.[1] (Doc. 1-2 at 119 [Compl. ¶ 9].) Plaintiff describes the message as having been sent "to his students, football players, and parents in the hopes of holding a meeting to discuss the future of the Claiborne County High School football team." (*Id.*; *see also* Doc. 24-1 at 10 [Pl.'s Br. ¶ 15] (purpose of meeting was "to

---

[1] Neither party has provided the Court with a screenshot of the Facebook message. While Defendant disclaims knowledge of the date of the message (Doc. 26 at 4 n.4), the parties do not appear to dispute its wording. The Court considers the message as having been sent on the date alleged by Plaintiff, who is the party in whose favor the Court should view the evidence. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

discuss the future of the Claiborne County High School football team").) The message stated as follows:

> Claiborne football. I would like to meet with the parents of current and upcoming football players about next year if I could. This meeting is very important and needs full cooperation. Meeting will be next Tuesday at a location to be determined at 4:30. Those who will attend need to in-box me ASAP. Thank you and God bless.

(Doc. 26-1 at 5 [Holdway Dep. 100:2–13].)

The next day, April 29, 2016, a meeting took place among Plaintiff, Holdway, and at least one other employee or representative of Defendant, Assistant Director Bob Oakes. Plaintiff was asked to turn in his keys and not return to campus for the remaining three weeks of the school year. (Doc. 24-2 at 11 [Pl. Decl. ¶ 15].) Plaintiff was escorted out of his classroom and the building by two white males, a Sheriff's Resource Officer and an Assistant Principal. (*Id.*)

Plaintiff characterizes the April 29 meeting as having had the legal effect of a termination or suspension. Defendant characterizes it as a non-renewal for the next year, arguing it was not a termination because Plaintiff was paid for the remainder of the year, and it was not a suspension because Defendant's policy on suspensions requires suspensions to be without pay.

Defendant asserts that Plaintiff's non-renewal resulted from purchasing irregularities and his having taken a student off campus to visit another student at home without obtaining the permission of the first student's parents. Plaintiff disputes the factual basis and the significance of these alleged issues.

Plaintiff made an audio recording of the April 29 meeting. (Doc. 24-2 at 11 [Pl. Decl. ¶ 16].) Afterwards, he used his personal email account and hardware other than Defendant's to send the recording to his wife and father-in-law. (*Id.* at 11–12.) But because Plaintiff had

3

previously used Defendant's computer system to access his personal email account, his personal email account remained accessible through Defendant's network system at this point, and Defendant obtained a copy of Plaintiff's recording, and possibly other unspecified material, through Defendant's computer system.

Defendant's Policy 1.805 governed the use of electronic mail during Plaintiff's employment. The policy stated in part as follows:

> Because all computer hardware and software belong to the Board [Defendant], all data including e-mail communications stored or transmitted on school system computers can be monitored. Employees/board members have no right to privacy with regard to such data. Confidentiality of e-mail communication cannot be assured. E-mail correspondence may be a public record under the public records law and may be subject to public inspection.

(Doc. 18-4.)

Defendant paid Plaintiff his teaching salary for the entire 2015–2016 academic year, divided into twelve monthly payments. He received a single salary payment each month from September 2015 through May 2015,[2] and three salary payments in June 2016. (Doc. 18-7.) Plaintiff also received a $4,000 coaching stipend in December 2015. (*Id.*)

Plaintiff originally filed this action in the Circuit Court for Claiborne County, Tennessee, on June 14, 2016, alleging Defendant discriminated against him based on his race. Defendant removed the case to this Court on June 21, 2018, after Plaintiff's Third Amended Complaint added claims under 42 U.S.C. §§ 1983 and 1986. (Doc. 1). Defendant now moves for summary judgment on all of Plaintiff's claims.

---

[2] Plaintiff's gross monthly pay was $3,083.50 every month except October 2015, when his gross monthly pay was $2,528.47. (Doc. 18-7 at 1.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could

5

not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. DISCUSSION

Plaintiff's only federal causes of action are brought under 42 U.S.C. § 1983 for violation of his rights under the First and Fourth Amendments to the U.S. Constitution.[3] Because Defendant is entitled to judgment as a matter of law on both of these causes of action, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and will remand this action to state court.

#### A. Freedom-of-Speech Claim

In order for a public employee's speech to receive First-Amendment protections, he or she must speak as a citizen on a matter of public concern, and not pursuant to his or her official duties. *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010). The critical question in determining whether speech was made as an employee or as a citizen "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Boulton v. Swanson*, 795 F.3d 526, 533–34 (6th Cir. 2015) (quoting *Lane v. Franks*, 573 U.S. 228, 240 (2014)). Thus, for example, a sheriff's deputy spoke as a citizen

---

[3] In his proposed Fourth Amended Complaint, Plaintiff withdrew his claims under 42 U.S.C. § 1986 (Doc. 23-1), as he explained in response to Defendant's motion for summary judgment (Doc. 24-1 at 18.) Although Plaintiff was denied leave to file his Fourth Amended Complaint (Doc. 30), Plaintiff has still not sought to support his § 1986 claims or respond to Defendant's arguments seeking their dismissal. The Court will therefore **DISMISS** Plaintiff's claims under § 1986.

6

when he testified as a union member about on-the-job firearms training during a union arbitration, despite the fact that his knowledge of the training came from his employment. *Id.* at 534–35. On the other hand, most jobs carry "an inherent duty of internal communication," such that conversations with superiors or other representatives of the employer about job-related matters are made in the employee's role as an employee. *Id.* at 533 (collecting cases).

Defendant argues Plaintiff's Facebook message was not protected speech because it was made pursuant to his duties as Claiborne High School's head football coach. Defendant points out that the message requests a meeting with current and future football players and their parents about the football team's next season, a request that drew its authority solely from his position as head football coach.

In response, Plaintiff argues he made the post "as a private citizen because he spoke out for his concern for the foundation of the football program in Claiborne County and the direction of the kids in the Claiborne County community." (Doc. 24-1 at 17.) According to Plaintiff, the overarching concern he wished to discuss during the proposed meeting was "the positive impact a football program could have on the kids, the community, and the school," and he wished to discuss several specific subjects: fundraising; little league and middle school football camps; new equipment for the football team, including a weight room, uniforms, and helmets; and mentorship for children. (Doc. 24-2 at 10–11 [Pl. Decl. ¶ 15].)

The Court concludes Plaintiff's Facebook post requesting a meeting was made as an employee, not as a private citizen. Meeting with current and potential future football players and their parents about the football program would ordinarily be within the scope of a head football coach's duties. *See Boulton*, 795 F.3d at 533–34 (critical question is whether the speech is

7

ordinarily within scope of duties). So, too, would be engaging in speech to organize such a meeting. Plaintiff's speech in this case is analogous to the speech in internal-communication cases; while it was not directed to other employees or representatives of his employer, it was a type of communication that was inherent in Plaintiff's position. *See id.* at 533.

Despite Plaintiff's assertion that he called the meeting as a private citizen, Plaintiff does not dispute that calling such a meeting was within the scope of his duties as an employee. He also does not explain how a head football coach's calling such a meeting could be considered outside of the coach's duties.

Because Plaintiff engaged in the speech in question as an employee rather than as a private citizen, that speech does not implicate the First Amendment. Plaintiff's § 1983 action for First-Amendment retaliation will be **DISMISSED**.

### B. Search-and-Seizure Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches" by government officials. U.S. Const. amend. IV. The Fourth Amendment applies to a government entity acting in its capacity as an employer. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010). The proper analytical framework for such a claim is, however, unsettled. *See id.* at 756–57 (discussing frameworks set out by plurality and concurrence in *O'Connor v. Ortega*, 480 U.S. 709 (1987), and finding it unnecessary to resolve discrepancy.)

In general, "[a] 'search' occurs for purposes of the Fourth Amendment when the government invades an individual's reasonable expectation of privacy." *United States v. Anderson-Bagshaw*, 509 F. App'x 396, 402 (6th Cir. 2012). A reasonable expectation of privacy exists where two requirements are met: first, the person asserting the right "must exhibit a

subjective expectation of privacy," and second, that expectation must be objectively reasonable. *United States v. Gooch*, 499 F.3d 596, 601 (6th Cir. 2007). Regarding the objective reasonableness of a person's expectation of privacy, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *United States v. Mathis*, 738 F.3d 719, 731 (6th Cir. 2013) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).

Defendant argues that Plaintiff could have had no reasonable expectation of privacy in his email account, given that he chose to log into his personal email account through Defendant's computer system despite Defendant's written policy that "all data including e-mail communications stored or transmitted on school system computers can be monitored[,] [and] [e]mployees/board members have no right to privacy with regard to such data." (Doc. 19 at 8–9.) Defendant argues that by voluntarily logging into his personal account on Defendant's system and remaining logged in, Plaintiff had no expectation of privacy in his personal email account until after he logged out by changing his password.

Plaintiff's response to Defendant's argument consists of two sentences focusing exclusively on facts, not law. He refers to his proposed Fourth Amended Complaint for an articulation of his claim, and he asserts that "Assistant Director Bob Oakes admits to having the email with the recording in his possession which was in violation of the Plaintiff's Fourth Amendment Rights." (Doc. 24-1 at 18.) Plaintiff does not cite any case law or respond to Defendant's argument that he could not have had a reasonable expectation of privacy in his personal email account under the facts presented here.

"[E]mail requires strong protection under the Fourth Amendment." *United States v. Warshak*, 631 F.3d 266, 286 (6th Cir. 2010) (analogizing Fourth-Amendment protections for mail

9

to those for email). As the Supreme Court has recognized in a case concerning employer-owned communication equipment, resolving privacy issues with regard to digital communications is a delicate and complex question:

> The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear. . . . . Rapid changes in the dynamics of communication and information transmission are evident not just in the technology itself but in what society accepts as proper behavior.

*City of Ontario*, 560 U.S. at 759.

Defendant has argued its written policy defeats any argument by Plaintiff of a reasonable expectation of privacy in his personal email account. Plaintiff's response fails to address the merits of Defendant's argument or in any way engage with any applicable law on this potentially complex Fourth-Amendment question. In light of Plaintiff's "conclusory allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument," *see United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009), the Court finds Plaintiff has waived his opposition to Defendant's argument, and Defendant's argument is well taken. Plaintiff's § 1983 action for Fourth-Amendment retaliation will be **DISMISSED**.

### C. State-Law Claims

Plaintiff's remaining claims are brought under the law of the state of Tennessee. The Court has supplemental jurisdiction over these claims because "they form part of the same case or controversy under Article III of the United States Constitution" as the § 1983 claim over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim in the following circumstances:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In making this discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here, the Court will dismiss all claims over which it has original jurisdiction. When all federal claims are dismissed, the preferred disposition of state-law claims that came into federal court on removal is remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc . v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Because the Court will grant summary judgment to Defendant on Plaintiff's federal claims the Court will **REMAND** Plaintiff's remaining claims back to state court.

IV. **CONCLUSION**

The Court will **GRANT** Defendant's motion for summary judgment (Doc. 18) **IN PART** as to Plaintiff's federal claims. Plaintiff's claims under 42 U.S.C. §§ 1983 and 1986 will be **DISMISSED**. The Case will be **REMANDED** to the Circuit Court for Claiborne County.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**